IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN K. JONES, individually and dba Knead Therapy Associates,<br><br>            Plaintiff,<br><br>   v.<br><br>CITY OF MODESTO; ED STEELE; and ROY WASDEN,<br><br>            Defendants. | CV F 04-5614 AWI DLB<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION**<br><br>(Document #27) |

This civil rights action arises from Defendants' summary suspension of Plaintiff's massage therapist license and massage establishment license.   The court has jurisdiction over the civil rights claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim.   Because the events underlying this action occurred in Modesto, California, venue is appropriate in this court.   Pending before the court is Defendants' motion for summary judgment or, in the alternative, summary adjudication.

## BACKGROUND

On May 24, 2005, Plaintiff filed a first amended complaint.   The first claim for relief is brought under 42 U.S.C. § 1983 and alleges that Defendants denied Plaintiff of his procedural due process rights.   The second claim for relief is brought under 42 U.S.C. § 1983 and alleges that Defendants unlawfully took Plaintiff's property and denied Plaintiff of substantive due process.  The third claim for relief is brought under 42 U.S.C. § 1983 and alleges that Defendants denied Plaintiff equal protection.   The fourth claim for relief is brought under state law and

alleges that Defendants were negligent.

On September 27, 2005, Defendants filed a motion for summary judgment or, in the alternative, summary adjudication.   Defendants allege that Plaintiff did not have a property or liberty interest in his massage therapist license.   Defendants allege that Plaintiff was not entitled to a pre-deprivation hearing and was provided with a meaningful post-deprivation hearing. Defendants contend that Plaintiff's takings claim is unripe.   Defendants contend that Plaintiff was not denied of substantive due process.   Defendant contend that Plaintiff's equal protection claim fails because Defendants' actions were rationally related to a legitimate government interest and Plaintiff has no proof that he was treated differently than other similarly situated individuals.  Defendants contend that Defendants Steele and Wasden are protected by qualified immunity from the civil rights claims.   Defendants contend that they are entitled to immunity from Plaintiff's negligence claim.   Defendants contend that Plaintiff's demand for punitive damages has no merit because there is no evidence Defendants Steele's and Wasden's actions were motivated by evil motive or intent or done with reckless or callous indifference to Plaintiff's rights.

On October 17, 2005, Plaintiff filed an opposition.  Plaintiff contends that he had a liberty and property interest in his massage therapist license and massage establishment license. Plaintiff contends that Defendants' failure to provide him with a pre-deprivation hearing was not justified by extraordinary circumstances, and even if it was, Defendants failed to provide Plaintiff with a timely or meaningful post-deprivation hearing.  Plaintiff contends that there is a disputed issue of fact on Plaintiff's equal protection claim because there are facts showing Defendants voiding of Plaintiff's license was pretextual and other therapists were treated differently. Plaintiff contends Defendants Wasden and Steele are not entitled to summary judgment. Plaintiff contends that Defendants are not entitled to summary adjudication on Plaintiff's prayer for punitive damages.

On October 24, 2005, Defendants filed a reply.

2

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v. Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710 (9th Cir. 1985)

> Under summary judgment practice, the moving party
> [A]lways bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id</u>. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party

1   may not rely upon the mere allegations or denials of its pleadings, but is required to tender

2   evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

3   support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11;

4   First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The

5   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

6   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

7   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

8   Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

9   return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem

10  Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  In the endeavor to establish the existence

11  of a factual dispute, the opposing party need not establish a material issue of fact conclusively in

12  its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

13  resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290;

14  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

15  pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

17  amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th

18  Cir. 1985).

19      In resolving the summary judgment motion, the court examines the pleadings,

20  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

21  any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th

22  Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and

23  all reasonable inferences that may be drawn from the facts placed before the court must be drawn

24  in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc.,

25  369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th

26  Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

27

28                                          4

1  obligation to produce a factual predicate from which the inference may be drawn.  Richards v.

2  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

3  Cir. 1987).      Finally, to demonstrate a genuine issue, the opposing party "must do more than

4  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

5  taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7                                        **FACTS[1]**

8  ***A.  Undisputed Facts***

9         At all relevant times, Plaintiff, BRIAN JONES (hereinafter "Plaintiff" or "Jones") was

10 operating a massage therapy business known as Knead Therapy Associates.

11        Defendant CITY OF MODESTO (hereinafter the "City") has enacted provisions in the

12 Modesto Municipal Code ("MMC") that provide for the licensing and regulation of

13 massage/bodywork therapists and establishments.

14        At all relevant times, Defendant Ed Steele supervised the unit of the Modesto Police

15 Department that enforced the code provisions for the licensing and regulation of

16 massage/bodywork therapists and establishments.  The Chief of Police, Roy Wasden, is charged

17 with the duty to enforce the MMC as it relates to massage therapists and establishments.

18 Defendant Wasden delegated that authority to Defendant Steele and Leslie Rodriguez.

19 Defendant Steele, in turn, delegates most of the responsibility under the MMC to Rodriguez.[2]

20        Prior to the events giving rise to the instant litigation, Plaintiff held a massage therapist

21 license and massage establishment license (hereinafter "licenses").

22        The parties dispute whether the MMC's licenses are restricted and whether they confer

23 property rights or privileges to the holder.   The parties dispute whether the MMC provides a

24 _____

25        [1]  These facts are deemed undisputed for the purposes of this motion only.

26        [2]  The court finds these facts undisputed because Plaintiff does not dispute Defendants'
   proposed fact.  Rather, Plaintiff has added addition information that has been incorporated into
27 the undisputed facts.

28                                          5

right of renewal for the licenses.   Because these are legal conclusions, the issue of whether the licenses conferred a property interest and whether Plaintiff should have reasonably expected the licenses to continue as long as he continued to comply with the requirements of the MMC is discussed below.

The MMC allows the Chief of Police to, without a hearing, suspend licenses pending a final determination at a hearing.  The parties dispute whether this violates the Fourteenth Amendment.

Pursuant to the MMC, by May 1, 2003, when the new educational requirements became effective, all those already holding licenses had to have completed 300 hours of professional education, an increase from the 180 hours previously required.   The parties dispute whether this new rule was actually enforced.

On or about April 21, 2003, Plaintiff was treating one of his patients.  After treatment, the patient contacted the police department, reporting that Plaintiff had inappropriately touched her breasts and touched her below the waist.  The patient reported that on April 3, 2003, Plaintiff had inappropriately touched her breasts as well.

The patient's complaint resulted in the preparation of Modesto Police Department Report No. 03-36974 and a subsequent citizen's arrest of Plaintiff.

The citizen's arrest of Plaintiff led to the filing of felony charges for sexual battery against Plaintiff by the Stanislaus County District Attorney's Office.   After a preliminary hearing on November 24, 2003, the court found sufficient evidence to proceed to trial and Plaintiff was tried before a jury.  After a trail, the jury was unable to reach a verdict.[3]   The filing of the felony charges, preliminary hearing, and court's ruling did not occur until after Defendants had suspended Plaintiff's licenses.

---

[3]  Because Defendants' base their argument in part on the facts surrounding Plaintiff's criminal case, they have been included.   To show a complete picture, Plaintiff's additional facts concerning the timing of the criminal case in relation to the suspension of Plaintiff's licenses has been included.  Thus, Plaintiff's relevance objection is denied.

1      On or about April 25, 2003, Defendant Ed Steele caused to be served on Plaintiff

2  a letter immediately suspending Plaintiff's licenses.   The suspension was made pursuant to

3  MMC §5-2.1001.   The parties dispute whether the MCM allowed the immediate suspension of a

4  license.

5      The notice of suspension was based on an alleged violation of MMC §5-2.901 (d)(1)(2).

6  Subsection (d)(1) prohibits exposure of the sexual or genital part of the licensee in the course of a

7  massage and subsection (d)(2) prohibits exposure of the sexual of genital part of any other

8  person in the course of a massage.   Sexual or genital parts include the genitals, anus, perineum of

9  any person and the breasts of any female.

10      The notice of suspension also informed plaintiff of his right to appeal the suspensions

11  under MMC §5-2.1002.[4]

12      The parties dispute whether on May 1, 2003, Plaintiff could verify and/or Defendants had

13  in their possession evidence that Plaintiff had the requisite 300 hours of education required to

14  maintain his massage therapist license.   Defendants cite to evidence that Plaintiff only provided

15  a certificate from Wellsprings for 200 hours in response to their request for production of

16  documents.   Plaintiff cites to evidence in Defendant's files certifying his membership with the

17  Associated Bodywork & Massage Professions, that requires at least 500 hours of training, and

18  Plaintiff's academic, experiential, and professional qualifications to act as an instructor in

19  message therapy.[5]   Because the parties dispute whether Plaintiff had at least 300 hours of

20  education as of May 1, 2003, the parties dispute whether Plaintiff's licenses lapsed on May 1,

21  2003.

22

23     [4]  While Plaintiff does not dispute this fact, Plaintiff adds that the suspension letter did

24  not set forth the nature of the complaint against Plaintiff or any of the allegations providing the
basis for the suspension, and did not identify the individual who complained.   The notice of

25  suspension also said nothing regarding a suspension due to a perceived emergency based on a
threatened harm to the public.

26     [5]  Defendants argue that if Plaintiff's position is that he did in fact have the required 300

27  hours, Plaintiff is not in the same class as other people who did not have enough hours and were
allowed to continue working.

28                     7

1    On or about May 9, 2003, Plaintiff appealed the suspension of his licenses.

2    The appeal hearing on the suspension of Plaintiff's licenses was held on or about

3    June 23, 2003.  The hearing officer concluded that the Police Chief could summarily suspend

4    massage licenses for thirty days for each violation of the massage/bodywork regulations.

5    While Plaintiff does not dispute this was the hearing officer's finding, Plaintiff contends the

6    hearing officer did not address whether the summary suspension complied with the Fourteenth

7    Amendment.

8    The hearing officer further concluded that the allegations supporting the suspension and

9    the notice of suspension were insufficient because the patient did not allege exposure of genital

10    or sexual parts and the notice did not contain enough information.

11    The hearing officer, however, made no conclusion regarding whether Plaintiff

12    had complied with the educational requirements.   At the hearing, Plaintiff provided no testimony

13    that he possessed the necessary hours.[6]

14    On or about September 9, 2003, Plaintiff was sent a letter from the City reminding him

15    that his massage therapist license had lapsed during the suspension period.  Pursuant to the

16    MMC, when one's license lapses during a suspension period, one must submit a new application.

17    Plaintiff was invited by the City to submit a new application.  To date, Plaintiff has not submitted

18    a new application, in the City or anywhere else.  While not disputing these facts, Plaintiff

19    contends that his license never lapsed because he had the required hours and the license was

20    wrongfully suspended without a hearing.

21    Plaintiff believed that both his massage therapist license and massage establishment

22    license were valid until 2005.   Plaintiff argues that his licenses were valid until 2005 because

23    Plaintiff's licenses were issued in March 2003 and the MMC provides that licenses shall be valid

24    for two years unless revoked or suspended.

25    _____

26    [6] Plaintiff contends that the hearing officer applied an incorrect burden of proof on this
     issue by placing the burden on Plaintiff.   Plaintiff contends the law requires the agency making
27    the allegation to prove facts necessary to support the action by clear and convincing evidence.

28                                                    8

On or about October 21, 2003, Plaintiff submitted a claim for money or damages to the City, which was denied on or about December 5, 2003.

Plaintiff filed his complaint in this court on April 24, 2004.   On May 24, 2005, Plaintiff filed the first amended complaint, alleging a violation of procedural due process, unlawful taking/violation of substantive due process, a violation of right to equal protection, and negligence.

No state court claim has been pursued.

**_B.  Plaintiff's Additional Facts_**

Since 1993, Plaintiff has operated as a massage therapist under licenses issued by the City.  The last licenses issued to Plaintiff were in March 2003.

As of April 25, 2003, Plaintiff had two licenses, a massage therapist license and a massage establishment license.  These are separate licenses issued by the City.

The massage establishment license allowed Plaintiff to run his massage business, even if he was not personally acting as a massage therapist.[7]

Plaintiff operated a massage business known as Knead Therapy Associates until April 25, 2003.

Absent a license from the City, an individual may not practice massage therapy in Modesto. In two separate places, the MMC provides that licenses "shall be valid for two (2) years from the date of issuance unless revoked or suspended."

Consistent with the MMC, the licenses Defendants issued to Plaintiff in March 2003 indicate that they expired in March 2005.   The parties dispute whether the licenses actually expired on May 1, 2003, when Plaintiff would have had to produce proof of his additional educational hours.

---

[7] Defendants object to this fact because Plaintiff cited to MMC 5-2.301.   However, a review of MMC 5-2.301 and MMC 5-2.302 reveal that to receive an establishment license, there is no requirement that the owner also have a massage therapist license.   Thus, this fact is deemed undisputed.

1    The parties dispute whether the allegations made by Colby Valentine were false.

2    Prior to the complaint made by Ms. Valentine, there were no formal complaints made

3    against Plaintiff to the City during Plaintiff's10 years as a massage therapist in the City.

4    The Chief of Police, Roy Wasden, is charged with the duty to enforce the MMC as it

5    relates to massage therapists and establishments.   In 2003, Defendant Wasden had delegated this

6    authority to Defendant Steele and Leslie Rodriguez.   Defendant Steele, in turn, delegated most

7    of the responsibility under the MMC to Rodriguez.[8]

8    Defendant Wasden did not provide Defendant Steele or Leslie Rodriguez any formal

9    training or guidance on constitutional requirements associated with dealing with professional

10   licenses.  In fact, the City provided no training to its employees regarding the enforcement of the

11   MMC as it relates to massage therapists and establishments, or in regard to the procedural due

12   process requirements associated with professional licenses.

13   Relying on the police report, the massage ordinances, and conversations with Officer

14   Lengel, District Attorney Nate Baker, Investigator Kanuck, and other massage therapists,

15   Defendant Steele concluded that Plaintiff had violated MMC section 5-2.901(d)(1)(2).

16   Defendant Steele then discussed his investigation and conclusions with Defendant Wasden.

17   Defendant Wasden did not do any investigation on his own.

18   Collectively, Defendant Steele and Defendant Wasden authorized the summary

19   suspension of Plaintiff's massage therapist license and massage establishment license for

20   violations of MMC Sections 5-2.901 (d)(1)(2).  Those sections, however, prohibit "exposure of

21   the sexual or genital part of the licensee/employee in the course of the massage/bodywork

22   technique, or the exposure of a sexual or genital part of any other person in the course of such

23   techniques."

24   Colby Valentine did not complain about any exposure of sexual or genital parts.

25

26   _____

27   [8]  Defendants contend that Defendant Steele has since rotated out of the position he held during all times relevant to this action.   As such, Plaintiff's proposed fact has been modified.

28                                          10

Defendant Wasden has admitted that the municipal code section cited in the suspension letter was not correct.

On April 25, 2003, Defendants issued a letter which stated that Plaintiff's massage therapist license and massage establishment licenses were suspended "based on a complaint filed under Article 9, Prohibited Conduct Applicable to Massage/Bodywork Business and Practionors, Section 5-2.901, (c),(d)(1),(2)."   The suspension letter did not set forth the nature of the complaint against Plaintiff or any of the allegations providing the basis for the suspension, and it did not identify the individual who complained.[9]

In the notice of suspension, Defendants said nothing regarding a suspension due to a perceived emergency based on threatened harm to the public.

At no time prior to suspending Plaintiff's licenses did Defendants provide Plaintiff notice of the allegations against him or an opportunity to respond.[10]

An administrative hearing on Plaintiff's appeal was held on June 23, 2003, before Administrative Hearing Officer Peter Cowles.  The hearing officer issued his findings on July 17, 2003.   The hearing officer concluded that the allegations against Plaintiff did not provide justification for a summary suspension of Plaintiff's licenses under the MMC section cited in the suspension letter.   The hearing officer further concluded that the notice of suspension provided to Plaintiff was inadequate under MMC Section 5-2.1001(f) because it did not give the reason for the suspension and did not give a time frame for a suspension.

The MMC allowed suspension for 30 days per alleged violation, or 60 days in this situation.   Plaintiff's June 23, 2003 hearing was one day before the maximum authorized

---

[9]  The court finds this paragraph accurately describes the letter Plaintiff was sent.

[10]  While Plaintiff may have had notice of the charges in a general sense because he had been arrested, there is no evidence that the Defendants in this action gave Plaintiff advance notice of any charges that they believed implicated his licenses.

1  suspension was to be reached.[11]

2      The MMC places the burden of proof on the applicant or licensee in any hearing or other

3  matter unless otherwise prohibited by law.   The parties dispute whether the burden of proof was

4  placed on Plaintiff.

5      Because Plaintiff was deprived of his establishment license for over 60 days, the two

6  other massage therapists renting space from Plaintiff went elsewhere.   Plaintiff was deprived of

7  any income for a period of two months.   Plaintiff was forced to close his business because he

8  had no income for two months.

9      On April 25, 2005, Defendants issued a press release regarding the complaint made by

10  Ms. Valentine against Plaintiff.   At the time Defendants issued the first press release, no charges

11  had been filed against Plaintiff by the district attorney.   Defendants issued another press release,

12  containing virtually identical language as the first release, nearly two months later.   Between the

13  issuance of the first and second press releases, not one person contacted the Modesto Police

14  Department with useful information in response to the request for information on Plaintiff in the

15  first press release.[12]

16      Defendant Steele and Defendant Wasden both admitted that they recognized the stigma

17  associated with being accused of sexual battery.   Defendant Steele also admitted that before a

18  press release is issued, there should be a "complete, thorough investigation on the criminal end."

19  He nevertheless issued the press release long before any hearing was provided to Plaintiff,

20  because he felt it was "newsworthy."

21      Defendant Steele did not issue a press release when the City's hearing officer found that

22  the City wrongfully suspended Plaintiff's licenses because he did not feel it was "newsworthy."

23

24      [11]  Plaintiff's proposed fact is argumentative and has been modified to reflect the

25  evidence.

26      [12]  While Defendants object to this evidence, the cited evidence supports this fact.
Whether the court should consider this evidence because it supports a liberty theory is discussed

27  below.

28                                            12

Plaintiff offers evidence supporting his allegations that his reputation was tarnished as a result of Defendants' actions.   Defendants' objection that this evidence is irrelevant because it goes to damages and because it is partially based on hearsay is noted and partially sustained.  The evidence is as follows:   Plaintiff, who presently works at Costco, has had people approach him and ask him "when he got out," evidencing their erroneous belief that Plaintiff was convicted of the crimes alleged. Plaintiff, who was an All-American swimmer in high school and college, used to work as a Certified A.S.C.A Coach (American Swimming Coach Association), teaching central valley coaches and their swimmers to compete at a higher level.  After Defendants issued the first press-release, people stopped calling Plaintiff to give lessons. Plaintiff has had trouble finding suitable work.  He has submitted several applications, but has received only a few interviews.  Finally, when Plaintiff operated Knead Therapy, he was regularly invited to local events. This no longer happens.

In May 2001, the City amended the MMC provisions relating to massage therapists.  One of the principal changes to the MMC was increased education requirements for massage therapists.  Whereas individuals only had to have 180 hours of education before the amendments, under the new MMC they were required to have 500 hours.   Existing licensees were grandfathered into this requirement, and had to have 300 hours of education by May 1, 2003.

Sometime after Colby Valentine made a complaint against Plaintiff in April 2003, Rodriguez wrote the word "void" across the copy of Plaintiff's license in the City's files, indicating her belief that the license was void as of May 1, 2003.   Rodriguez testified she did so because Plaintiff did not have proof of 300 hours of education on file with the City.

After the decision to suspend was made in June 2003, Defendant Wasden, Defendant Steele and Rodriguez discussed the voiding of Plaintiff's licenses due to alleged non-compliance with the educational requirements of the MMC.

In deposition testimony, Rodriguez claimed that the March 8, 2005, expiration date listed on Plaintiff's license was a "mistake."

13

1   Defendants did not inform Plaintiff that they considered Plaintiff's licenses void

2   due to non-compliance with the educational requirements of the MMC until after Plaintiff's

3   licenses had been suspended and Plaintiff had appealed that suspension.

4   While Rodriguez did send a letter to Plaintiff on May 14, 2003, stating that Plaintiff's

5   license has either "expired or is about to expire . . . . As a reminder, those therapists who were

6   grandfathered in under the prior ordinance, must have a minimum of 300 hours of education . . .

7   ."   Rodriguez testified that such letter was a form letter sent to all licensees in the City.

8   Rodriguez testified that she did not go through the files and determine who needed to

9   submit additional proof of education and who was in compliance with the hour requirements

10   which kicked in as of May 1, 2003.

11   Individuals have been identified in discovery who had less than 300 hours of education

12   on file with the City as of May 1, 2003.

13   Defendants claim that only two massage therapists beside Plaintiff had less than the

14   required hours.   Defendants claim one, Sue Ann Hay, provided additional hours.  Defendants

15   claim the other, Eiko Burnett, agreed to stop practicing message.    Plaintiff provides evidence

16   that Ms. Burnett is still in business.[13]   Exhibit A to Rodriguez's deposition shows that Ms.

17   Burnett had not received a new license as of April 25, 2005.   However there is no evidence

18   indicating whether Ms. Burnett is operating under a license issued by Defendants prior to May 1,

19   2003, and/or whether Ms. Burnett completed additional hours and obtained a new license

20   between April 2005 and October 2005.

21   While Defendants' responses to interrogatories dated September 29, 2005 indicate that

22   Defendants believe only Eiko Burnett and Sue Ann Hay had not submitted the required hours,

23   Rodriguez's deposition and Exhibit A to Rodriguez's deposition provide evidence that others

24

25   _____

26   [13]  Defendants object to Plaintiff's evidence, which is a gift certificate and business card
     obtained from Salon Salon, indicating Ms. Burnett was in business on October 5, 2005.   While

27   there appears to be some authentication problems with these documents, for the purposes of this
     motion the court will consider them as business records.

28                                              14

also not have sufficient hours.    Plaintiff points out in his opposition that Andrya Lopez was

issued a license on January 7, 2003, and submitted proof of 100 hours of education.    While Ms.

Lopez's license has now expired, presumably two years after the issuance date, on January 7,

2005, there is no indication that it was revoked or voided on or after May 1, 2003, because she

did not have enough hours.    Plaintiff points out that Ann Tipon-Morg was issued a license on

August 7, 2001, even though she had only submitted proof of 112 hours.    While Ms. Tipon-

Morg's license has now expired, presumably on August 7, 2003, there is no indication that it was

revoked or voided on or after May 1, 2003 because she did not have enough hours.    In addition,

the court's own review of Exhibit A reveals several other individuals who appear to have had

valid licenses as of May 1, 2003, but the City's records do not reflect 300 hours of education.

While these individual's licenses have now expired, there is no indication that they were revoked

or voided on May 1, 2003.   These individuals include Jamie Ciuffo (issued on October 9, 2002,

no hours listed); Charmaine Desimas (issued on May 23, 2001, 200 hours); Sherice Escobedo

(issued on July 26, 2001, 232 hours);  Angelique Fields (issued on July 2, 2001, 232 hours);  Liset

Garcia (issued on July 23, 2001, 230 hours); Roberto Garcia (issued on October 1, 2002, 232

hours); Michelle Gillespie (issued on June 19, 2001, 200 hours); Gerardo Guitron (issued

November 18, 2002, no hours); Jiminez Robert (issued on July 3, 2001, 190 hours); Martha

Ketchum (issued on October 23, 2001, 232 hours); Pam McConnell (issued November 16, 2001,

276 hours); Paula McGrath (issued August 14, 2001, 223 hours); and Rebekah Yepez (issued

August 2, 2001, 220 hours.    While it is possible the above listed individuals did not have valid

license as of May 1, 2003, Defendants have failed to provide evidence as to when these licenses

expired and whether these individuals did have the required hours despite Exhibit A.   At a

minimum, Defendants should have addressed Andrya Lopez and Ann Tipon-Morg because these

individuals were specifically cited by Plaintiffs.   Thus, at this time, the court finds a disputed

issue of fact on whether there were other individuals with valid licenses on May 1, 2003, but

from whom the City did not have records showing 300 hours of training, and Defendants did not

15

void or revoke their licenses.

The parties dispute whether Plaintiff did in fact have 300 hours of education.   The parties dispute whether if the City had diligently investigated documents in its files they would have known Plaintiff had over 300 hours of education.    For the purposes of this motion, the court does not need to resolve this dispute.   At issue in Plaintiff's due process claim is Plaintiff's suspension based on allegedly improper conduct with a patient.   Plaintiff's equal protection claim is based on Defendants' voiding Plaintiff's license for lack of 300 hours when Defendants documents indicate others also lacked 300 hours but their licenses were not voided.   For neither claim is it necessary to resolve whether Plaintiff really had 300 hours of education.

To date, Defendants have not reinstated Plaintiff's licenses.   Defendants claim it would be impossible to have reinstated Plaintiff's licenses because they expired during the suspension period.

The MMC requires the Police Chief to approve the issuance of a massage therapist license or massage establishment license if certain enumerated requirements are met. If the requirements are met, the MMC affords no discretion to deny the license.   The MMC states what is required for renewal.   It provides that the Police Chief "shall renew the license if the licensee continues to meet the requirements for issuance of a license, and none of the grounds for denial of a license set forth in this chapter exist."

Plaintiff expected that his licenses would continue, so long as he continued to comply with the requirements of the MMC.[14]

Plaintiff offers as a proposed fact that with regard to the timing of Defendants' suspension of Plaintiff's licenses, Defendant Steele testified that "it's not like there was a real time crunch" in determining whether to suspend Plaintiff's licenses.   And, Steele testified that Plaintiff's history (a 10 year complaint free record with the City) was a relevant factor to consider

---

[14]   The court finds this fact is undisputed for the purposes of this motion.   However, Plaintiff's subjective exception is not particularly relevant to the due process inquiry.

16

prior to determining whether suspension was warranted but he did not research Plaintiff's history.  However, a review of Steele's deposition reveals that his statements about a time frame concerned whether the regulations required Defendants to suspend Plaintiff within a certain time period after the complaint was received.   Steele's deposition implies he did believe there was an urgency to doing "something" about the allegations.   Steele's testimony regarding Plaintiff's history only indicates he cannot recall whether he researched it, but that the allegations were the overriding concern.  Thus, the court finds there is insufficient evidence to find Defendants have admitted there was "no real time crunch" to suspend Plaintiff's massage therapist license.

When Defendant Steele advocated to Defendant Wasden for the suspension of Plaintiff's license, he believed he was advocating only for the suspension of the massage therapist license.   Defendant Steele was unaware that Plaintiff had massage therapists working with him and if he had known that Plaintiff had other people working with him it would have changed his mind as to the decision to suspend the establishment license.   While Defendants point to evidence that Plaintiff rented space to independent contractors who did not work for Plaintiff, Defendants do not dispute the fact that Defendant Steele clearly indicated in his deposition that there was no need to  suspend the establishment license if it would have stopped other people who did nothing wrong from working in Plaintiff's establishment.

MMC section 5-2.105(b) provides: "The five hundred (500) hour educational requirement shall not include internship hours obtained by a student from a school when the school collects a fee from the public for a massage given by the student, and the school then credits the student with "internship hours."

Plaintiff submits evidence that Abrams College in Modesto, California, provides certificates to students for 500 hours in massage therapy education, and that a portion of those 500 hours includes 160 internship hours obtained by students where the school collects a fee from the public for massages given by students.  Plaintiff submits evidence that several individuals have been, and continue to be, licensed by the City based on earning 500 hours of

education at Abrams College.   The evidence concerning Abrams College is a printed copy of the web-site for Abrams College.   The court does not need to resolve whether Plaintiff's evidence regarding Abrams College is admissible.   As discussed below, the similarly situated class for Plaintiff's equal protection claim is individuals not having 300 hours as of May 1, 2003.  Based on the Abrams College web-cite, Abrams College graduates would still have 340 hours of non-internship hours.   Whether Defendants should not find Abrams College graduates meet the 500 hour requirement for licenses issued after May 1, 2003, is not relevant to Plaintiff's equal protection claim.

**DISCUSSION**

**A. Procedural Due Process**

Plaintiff first claim contends that Defendants violated his procedural due process rights. Defendants request summary adjudication on this claim.   Due process requires "an opportunity for some kind of hearing prior to the deprivation of a significant property interest." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978).  Before a property or liberty interest can be taken, the owner of the interest is entitled to notice and a hearing "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  The notice must be sufficient to enable the plaintiff to prepare for the hearing in a meaningful way. See Memphis Light, 436 U.S. at 14.  "Precisely what procedures the Due Process Clause requires in any given case is a function of context." Brewster v. Board of Educ. of the Lynwood Unified School Dist., 149 F.3d 971, 983 (9th Cir. 1998).  What procedures satisfy due process in a given case are determined by the three-part balancing test of Mathews v. Eldridge, 424 U.S. 319 (1979).  See Brewster, 149 F.3d at 983.  Mathews v. Eldridge requires the court to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

1  <u>Mathews</u>, 424 U.S. at 335.

2  ***1. Property Interest***

3      To establish a claim for the denial of procedural due process, the plaintiff must first

4  establish that he had a property or liberty interest protected by the due process clause.  <u>See</u> <u>Board</u>

5  <u>of Regents v. Roth</u>, 408 U.S. 564, 569 (1972);  <u>Dittman v. California</u>, 191 F.3d 1020, 1029 (9th

6  Cir. 1999);  <u>Wedges/Ledges of Cal., Inc. v. City of Phoenix</u>, 24 F.3d 56, 62 (9th Cir. 1994).

7  Defendants contend that Plaintiff's procedural due process claim fails because Plaintiff did not

8  have a property interest in his licenses.   Plaintiff contends that the MMC gave gave him a

9  property interest in his licenses.

10      Property interests derive not from the Constitution but from "existing rules or

11  understandings that stem from an independent source such as state law--rules or understandings

12  that secure certain benefits and that support claims of entitlement to those benefits."  <u>Roth</u>, 408

13  U.S. at 577; <u>Gallo v. U.S. Dist. Court For Dist. of Arizona</u>, 349 F.3d 1169, 1178 (9th Cir. 2003).

14  In order to establish a constitutionally protected property interest, a plaintiff must have more than

15  a unilateral expectation of such right, and the plaintiff must have a legitimate claim of

16  entitlement to it.  <u>Roth</u>, 408 U.S. at 577.   "Whether a statute creates a property interest depends

17  largely upon the extent to which the statute limits an agency's discretion in denying a license to

18  an applicant who meets the minimum requirements." <u>Groten v. California</u>, 251 F.3d 844, 850 (9th

19  Cir. 2001).   In other words, if the governing statute directs that a license shall be granted or

20  renewed upon compliance with certain criteria, none of which involve the exercise of discretion

21  by the reviewing body, the licensee has a property right in the re-issuance of the license.

22  <u>Thornton v. City of St. Helens</u>, – F.3d –,  2005 WL 2127890, *5 (9th Cir. 2005).

23      The United States Supreme Court has recognized that property interests extend to

24  already-acquired benefits.   In <u>Bell v. Burson</u>, the Supreme Court stated that: "Once licenses are

25  issued . . . as in petitioner's case, their continued possession may become essential in the pursuit

26  of a livelihood.   Suspension of issued licenses thus involves state action that adjudicates

27

28                                  19

1    important interests of the licensees." <u>Bell v. Burson</u>,  402 U.S. 535, 539 (1971).  However, when

2    addressing a plaintiff who is merely an applicant for a license, the critical inquiry becomes

3    whether the ordinance grants discretion to the decision maker who approves or denies the license

4    because no constitutionally protected property interest can exist in the outcome of a decision

5    unmistakably committed to the discretion of the public entity . <u>Ulrich v. City & County of San</u>

6    <u>Francisco</u>, 308 F.3d 968, 976 (9th Cir. 2002).

7    There evidence showing that the MMC gave Plaintiff a property interest in his licenses.

8    The MMC provides that after having conducted an investigation, the Police Chief "shall"

9    approve issuance or renewal of a license if he or she finds certain criteria are met.  <u>See</u> MMC 5-

10    2.302 & 5-2.403.   Because the MMC provides explicit instructions as to when a license must be

11    granted and renewed, the licenses are mandatory in nature.  The MMC provides no discretion to

12    deny or fail to renew a license if the requirements are met.  Under these regulations, the Police

13    Chief has extraordinarily limited discretion.  <u>See</u> <u>Ressler v. Pierce</u>, 692 F.2d 1212, 1215 (9th

14    Cir.1982) (applicant for federal section 8 housing benefits has a property interest within meaning

15    of the Due Process Clause because HUD has only "limited discretion in the . . . application and

16    selection process").   Thus, Plaintiff had a property interest in his licenses.

17    At issue in this action is Defendants' suspension of Plaintiff's license.   Courts have  long

18    recognized that licenses which enable one to pursue a profession or earn a livelihood are

19    protected property interests for purposes of a Fourteenth Amendment analysis.  <u>Gerling Global</u>

20    <u>Reinsurance Corp. of America v. Low</u>, 186 F.Supp.2d 1099, 1109 (E.D. Cal. 2001).  "Suspension

21    of issued licenses thus involves state action that adjudicates important interests of the licensees.

22    In such cases the licenses are not to be taken away without that procedural due process required

23    by the Fourteenth Amendment." <u>Bell</u>, 402 U.S. at 539.   The Ninth Circuit has specifically

24    recognized that an existing license, in contrast to an applied for license, constitutes a legitimate

25    entitlement of which one cannot be deprived without due process.  <u>See</u> <u>Greenwood v. Federal</u>

26    <u>Aviation Administration</u>, 28 F.3d 971, 975 (9th Cir.1994) (addressing suspension of pilot's

27

28                                                        20

license).

In this action, the parties agree that Plaintiff already had a massage therapist license and a massage establishment license.  The parties agree that the massage therapist license was necessary for Plaintiff to work as a massage therapist, and the massage establishment license was necessary for Plaintiff to own a massage business.   At issue in this action is Defendants' suspension of Plaintiff's licenses and not Defendants' failure to issue the licenses or renew the licenses.   Thus, under the reasoning of Bell and its progeny, Plaintiff had a property interest in his licenses.   Accordingly, Defendants are not entitled to summary adjudication on the ground that Plaintiff did not have property interest in his licenses.

## 2.  Liberty Interest

Because Plaintiff had a property interest in the licenses, he was entitled to procedural due process before his licenses could be taken away.   Plaintiff also claims that he had a liberty interest in his licenses.  Defendants request summary adjudication because Plaintiff cannot show that the termination of his licenses stigmatized him so much that he could not practice massage therapy anywhere.

The Fourteenth Amendment's protection against deprivations of liberty encompasses the right of persons "'to engage in any of the common occupations of life.'"  Roth, 408 U.S. at 572 (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923); Campanelli v. Bockrath, 100 F.3d 1476, 1478 (9th Cir.1996); Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 65 n. 4 (9th Cir. 1994).   The Supreme Court "has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment. . . ."  Conn v. Gabbert, 526 U.S. 286, 291-92 (1999).  However, cases recognizing this right "all deal with a complete prohibition of their right to engage in a calling."  Id. at 292.  Although the precise contours of the liberty right to choose one's field of private employment "remain largely undefined, the Supreme Court observed recently that the line of authorities establishing the liberty interest all dealt with a complete prohibition of the right to

21

1  engage in a calling, and not merely a brief interruption in one's ability to pursue an occupation or

2  profession." Dittman v. California, 191 F.3d 1020, 1029 (9th Cir. 1999).

3         Even taking the evidence in the light most favorable to Plaintiff, the court cannot find that

4  Defendants' conduct resulted in a complete prohibition against Plaintiff's profession.  In a case

5  involving the discharge a professor, the Supreme Court held that due process was not implicated

6  because the State had not barred the professor "from all other public employment in state

7  universities." Roth, 408 U.S. at 573.  Similarly, the Ninth Circuit found a janitor's discharge

8  did not deprive him of a liberty interest because the janitor had "not been banned from pursuing a

9  janitorial position elsewhere or a career in law enforcement as he desires," and had only been

10  foreclosed from working for one school district. Llamas v. Butte Community College Dist., 238

11  F.3d 1123, 1128 (9th Cir. 2001).   In comparison, a liberty interest was found when a state denied

12  a plaintiff due process by refusing to allow him to qualify to practice law in the entire state.

13  Schware v. Board of Bar Examiners of N.M., 353 U.S. 232 (1957).

14         Here, Plaintiff has failed to show that he has been completely prohibited from pursuing

15  his career as a massage therapist.   There is no indication that Plaintiff has attempted to get a

16  license in Modesto or any other county in California and been denied a license because of

17  Defendants' action.   While Plaintiff indicates that after the press releases he has had trouble

18  finding work, Plaintiff's declaration is too vague to conclude that no one in Modesto will hire

19  Plaintiff has a massage therapist.   In addition, there is no evidence that Plaintiff has attempted to

20  work as a massage therapist in other areas of California. The court has consistently held that a

21  plaintiff does not have liberty interests in a specific employer or employee. Llamas v. Butte

22  Community College Dist., 238 F.3d 1123, 1128 (9th Cir. 2001).   Given the evidence currently

23  cited by Plaintiff, the court cannot find a complete prohibition on Plaintiff's right to engage in his

24  calling as a massage therapist.

25         Accordingly, Plaintiff's due process claim may only proceed to the extent Plaintiff argues

26  he was deprived of a property right without due process.   The court grants Defendants summary

27

28                                                    22

1 adjudication on the theory that Defendants took Plaintiff's liberty interest without due process.

2 ### 3. Pre-Deprivation Hearing

3 The parties agree that Plaintiff was not given a pre-deprivation hearing before Defendants

4 summarily suspended Plaintiff's licenses.   Defendants contend that they are entitled to summary

5 adjudication on Plaintiff's due process claim to the extent it is premised on the failure to give a

6 pre-deprivation hearing because no pre-deprivation hearing was required.

7 The Supreme Court has held that due process does not always require a pre-deprivation

8 hearing and "where a State must act quickly, or where it would be impractical to provide pre-

9 deprivation process, post-deprivation process satisfies the requirements of the Due Process

10 Clause." Gilbert v. Homar, 520 U.S. 924, 930 (1997).   Where there is an "important

11 government interest, accompanied by a substantial assurance that the deprivation is not baseless

12 or unwarranted," the state may be justified in delaying "the opportunity to be heard until after the

13 initial deprivation."   FDIC v. Mallen, 486 U.S. 230, 240 (1988).   For example, when a state has

14 "probable cause to believe" that a state employee's continuing employment will jeopardize an

15 important governmental interest, there is the required assurance that the deprivation is not

16 baseless or unwarranted.  Barry v. Barchi, 443 U.S. 55, 65 (1979).

17 In Mustafa v. Clark County School Dist., 157 F.3d 1169 (9th Cir. 1998), the Ninth Circuit

18 upheld the suspension of a public school teacher without a pre-deprivation hearing based on

19 allegations of open and gross lewdness by a student.  The Ninth Circuit reasoned that a public

20 school teacher occupies a position of great public trust and high public visibility.  Id. at 1177.

21 The court noted that the plaintiff  was promptly afforded a hearing five days following the

22 suspension.   Id.   While recognizing that the suspension was not based on an independent

23 determination of probable cause that a serious crime had been committed, the Ninth Circuit

24 found that what was important was the fact the decision to suspend was not "baseless or

25 unwarranted."   Id.   The Ninth Circuit found the victim's police report and subsequent discussion

26 about the allegations reasonably supported the suspension.  Id.

27

28

The Supreme Court has extended the reach of the important government interest exception in several cases.   For instance, in <u>Mallen</u>, the Supreme Court held that the FDIC's interest in immediately suspending indicted bank officers outweighed the officers' interest in retaining their positions and therefore justified dispensing with pre-deprivation process.  <u>See</u> <u>Mallen</u>, 486 U.S. at 241.   Similarly, in <u>Barry</u>, the Supreme Court concluded that a State's interest in protecting the integrity of the sport of horse racing trumped horse trainers' interest in avoiding suspension and thus warranted a postponement of hearings. <u>See</u> <u>Berry</u>, 443 U.S. at 64-65.

### *a.   Pre-Deprivation Hearing on Massage Therapist License*

Based on these cases and the undisputed facts, the court cannot find a pre-deprivation hearing was required before Plaintiff's message therapist license could be suspended.   MMC 5-2.101 indicates that the City views massage therapy as offering the public a valuable health and therapeutic service.   The City has an interest in seeing that massage therapists conduct themselves in a way that contributes to their patients' health and therapy.   The City has an interest in protecting patients from being touched in a sexual manner not related to health and therapy.   The undisputed facts reveal that a patient made allegations to police that Plaintiff had inappropriately touched her on two separate occasions.   Plaintiff was arrested for these offenses. All evidence indicates that Plaintiff would have continued seeing patients had the City not summarily suspended Plaintiff's massage therapist license.   The City's interest in protecting citizens from being inappropriately touched by their massage therapist is greater than the State of New York's interest in "preserving the integrity" of horse racing, an interest the Supreme Court deemed sufficiently compelling to justify suspension of a horse trainer without a hearing in <u>Barchi</u>, 443 U.S. 55 (1979). Thus, based on the undisputed facts, the City's interest was sufficiently compelling to restrict Plaintiff's ability to conduct massage therapy pending a hearing.

In his opposition, Plaintiff points to defects in the suspension letter he was given.

24

Plaintiff points out the suspension letter accused him of violating Sections 5-2.901, which

concerns exposing sexual or genital parts.   The allegations made to the police concerned alleged

improper physical contact by Plaintiff.   The fact the suspension letter contained errors goes to

the notice Plaintiff was given concerning any post-deprivation hearing.   The focus on whether

Plaintiff should have been given a pre-deprivation hearing concerns the City's interest in

protecting citizens and not whether the suspension letter the City provided Plaintiff comported

with due process.   Given the undisputed facts establish that Ms. Valentine did complain to police

about improper conduct, the errors in the suspension letter do not show that Plaintiff should have

been given a pre-deprivation hearing.   Accordingly, Defendants are entitled to summary

adjudication on Plaintiff's due process claim to the extent Plaintiff contends that he was denied a

pre-deprivation hearing before Defendants suspended Plaintiff's massage therapist license.

### *b.  Pre-Deprivation Hearing on Massage Establishment License*

The facts reveal that Plaintiff had a massage establishment license that was separate from

his own massage therapist license.   Defendants have failed to come forward with any evidence

on what compelling reason the City had to summarily suspend Plaintiff's massage establishment

license.   There is evidence that other massage therapists worked in Plaintiff's establishment.   By

summarily suspending the establishment license, other therapists were also prohibited from

working on their patients in Plaintiff's establishment.   The court sees no significant difference

on whether these therapists were acting as Plaintiff's employees or independent contractors who

paid Plaintiff rent and/or a portion of their fees to Plaintiff.   Regardless of the other therapists'

status, summarily suspending the establishment license deprived them of their ability to work and

deprived Plaintiff of income from their work.   Defendants have provided no evidence or

argument justifying the summary suspension of the establishment license.   Thus, Defendants'

are not entitled to summary adjudication on Plaintiff's claim that his procedural due process

rights were violated because his establishment license was suspended without a pre-deprivation

hearing.

1    _**5.  Post Deprivation Hearing**_

2         Defendants contend that they are entitled to summary judgment on Plaintiff's due process

3    claim to the extent Plaintiff contends he was not given a meaningful post-deprivation hearing.

4         The Supreme Court has decided that in a situation where there is no practical way to

5    provide a pre-deprivation hearing, a post-deprivation hearing provided at a meaningful time and

6    in a meaningful manner will suffice to satisfy the requirements of due process.  Parratt v. Taylor,

7    451 U.S. 527 (1981).  The general rule is that the less the pre-deprivation process, the greater

8    must be the post-deprivation process.  Cassia v. Bowen,  824 F.2d 791, 798 (9th Cir. 1987).   The

9    court is to assess due process case by case based on the total circumstances.  California ex rel.

10   Lockyer v. F.E.R.C., 329 F.3d 700, 711 (9th Cir.2003). "Constitutional due process requires that a

11   party affected by government action be given 'the opportunity to be heard at a meaningful time

12   and in a meaningful manner.'"  Id. at 708, n. 6 (quoting Mathews, 424 U.S. at 333).

13   _**a. Timely Hearing**_

14        Plaintiff contends that his due process rights were violated because the post-deprivation

15   hearing was not timely.   By the time the hearing took place, on June 23, 2003, Plaintiff's 60 day

16   suspension was essentially over.  A delay in conducting a post-deprivation hearing can become a

17   constitutional violation.  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985).  Case

18   law has indicated a potential due process concern if a post-deprivation hearing is not conducted

19   until after the full penalty has been imposed and the suspension period has been served.  See

20   Barry v. Barchi, 443 U.S. 55, 66 (1979);  Cassia v. Bowen,  824 F.2d 791, 799 (9th Cir. 1987).

21   However, delay can be justified.

22        For even though there is a point at which an unjustified delay in completing a
          post-deprivation proceeding "would become a constitutional violation," Cleveland
23        Bd. of Education v. Loudermill, 470 U.S., at 547, 105 S.Ct., at 1496, the
          significance of such a delay cannot be evaluated in a vacuum. In determining how
24        long a delay is justified in affording a post-suspension hearing and decision, it is
          appropriate to examine the importance of the private interest and the harm to this
25        interest occasioned by delay; the justification offered by the Government for delay
          and its relation to the underlying governmental interest; and the likelihood that the
26        interim decision may have been mistaken.

27

28                                              26

FDIC v. Mallen, 486 U.S. 230, 242 (1988).

Applying the first factor discussed in Mallen, the court finds the private interest in this action was significant. Withholding both Plaintiff's massage therapist license and massage establishment license for close to sixty days resulted in Plaintiff not having any income for close to sixty days. This is a hardship. The Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood," and recognized that the "significance of the private interest in retaining employment cannot be gainsaid." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 543 (1985). Thus, the private interest at stake in not having a post-deprivation hearing earlier was great.

The government has an obvious interest in protecting its citizens. The fact the City enacted provisions in the MMC to provide for the licensing and regulation of massage/bodywork therapists and establishments indicates the City determined this was a field in which licencing and regulation was necessary to protect it citizens. However, the delay in conducting Plaintiff's post-deprivation hearing must be justified by the City's legitimate interest in a delay. The court recognizes that in other cases courts have found governmental interests required significant delays in post-deprivation hearings. However, Defendants have offered no justification for delay in this case nor any evidence of an underlying governmental interest that required the delay. Defendants argue in their brief as follows:

> Here, the CITY had an interest in maintaining confidence in the massage therapy profession, which was coupled with plaintiff's arrest and the filing of felony charges by an independent governmental agency, the District Attorney's Office. Therefore, there were sufficient grounds for the delay from the time of suspension to the day of the hearing.

Defendants' Motion at 17-18. However, Defendants offer no specific argument or evidence of their justification for the delay. It is unclear if the reason for the delay was governmental inefficiency, the need to further investigate the allegations, or pure spite by Defendants. While delay may often be "justified by an important government interest coupled with factors minimizing the risk of an erroneous deprivation," see Mallen, 486 U.S., at 242, and delays longer

than 60 days have been upheld, see Mallen, 486 U.S., at 243 (30-90 day delay); Loudermill, 470 U.S. at 547 (nine month delay), Defendants' failure to offer any legitimate governmental interest requiring the delay is fatal to Defendants' motion.   The court does recognize that Plaintiff waited two weeks to request a post-deprivation hearing.   However, because Defendants have offered no governmental interest which required the close to sixty day delay in this case – essentially the entire length of the summary suspension – the court cannot find the governmental interest requiring a delay significant.

The final factor focuses on the concern for accuracy.  Here, the initial decision to summarily suspend Plaintiff's license was based on one person's allegations.   Defendants had reviewed a police report in which Plaintiff denied the allegations.   To uphold the summary suspension any post-deprivation hearing required the City to make a credibility determination. Because the entire suspension rested on disputed facts, holding a hearing quickly would have better ensured the summary suspension was not a mistake.   Applying the Mallen factors, both the concern for accuracy and Plaintiff's interest in a quick hearing outweigh the government's unclear interest in delaying the hearing.   Thus, the court cannot grant Defendant summary adjudication on Plaintiff's due process claim based on the delay in giving Plaintiff a post-deprivation hearing.

**b.  Notice**

Besides the post-deprivation hearing's delay, Plaintiff also contends the notice he was given was not adequate.   Before a property interest can be taken, the owner of the interest is entitled to notice and a hearing "at a meaningful time and in a meaningful manner."  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  The notice must be sufficient to enable the plaintiff to prepare for the hearing in a meaningful way.  See Memphis Light, 436 U.S. at 14.   Defendants concede that Plaintiff's only notice –  the suspension letter –  cited to a code section dealing with improper exposure.  The letter gave no information about the allegations against Plaintiff. Nothing in this letter could have prepared Plaintiff to defend himself against charges of improper

touching.   The City's own hearing officer determined that Plaintiff's licenses had been improperly suspended for lack of adequate notice.   While there is an issue of whether Plaintiff can prove damages stemming from any inadequate notice because the hearing officer did not require Plaintiff to defend charges on which he had not been given proper notice, the court cannot find Defendants are entitled to summary adjudication on Plaintiff's allegation that he was not given proper notice.

**6.  *Additional Reasons to Suspend the License***

In their motion, Defendants also argue that Plaintiff's license lapsed six days after his suspension because he did not meet the required educational requirements under the MMC.   The parties dispute whether Plaintiff had the required 500 hours of training.   Plaintiff's failure to meet the educational requirements under the MMC is irrelevant to the determination of whether Plaintiff can establish a procedural due process claim.   The question of whether Plaintiff's license would have lapsed six days later is relevant to Plaintiff's possible damages.   It does not defeat Plaintiff's due process claim.

**B.  Taking / Substantive Due Process**

The second claim for relief alleges that Defendants unlawfully took Plaintiff's property and denied Plaintiff of substantive due process.   Defendants request summary adjudication of this claim.   Plaintiff has not opposed Defendants' motion on this claim.   Where a plaintiff fails to oppose a motion for summary judgment, the court may grant summary judgment if the defendant has supported the motion with sufficient papers that on their face reveal no genuine issue of material fact.  Henry v. Gill Indus., Inc., 983 F.2d 943, 950 (9th Cir. 1993).

**1.  *Taking***

Defendants are entitled to summary adjudication on Plaintiff's takings claim because it is not ripe.   Before a claim is ripe under the Takings Clause the property owner must avail himself of the state's judicial remedies in an effort to obtain just compensation.   Williamson County Reg'l Planning Commission v. Hamilton Bank, 473 U.S. 172, 195 (1985); Sinaloa Lake Owner's

1   Ass'n v. City of Simi Valley, 882 F.2d 1398, 1402 (9th Cir.1989).

2          The California Constitution allows a person to file a state cause of action in the California

3   courts for just compensation for an alleged taking through government action.  Cal. Const. art I, §

4   19; see also Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 164 (9th Cir.1993)

5   (compensation for taking available in California state courts).   There is no evidence Plaintiff

6   ever filed a suit in state court for compensation.  Thus, Plaintiff's Takings Clause claim is not

7   ripe, and Defendants are entitled to summary adjudication.

8   *2.  Substantive Due Process*

9          Defendants are entitled to summary judgment on Plaintiff's substantive due process

10  claim.   The use of substantive due process to extend constitutional protection to economic and

11  property rights has been largely discredited."  Armendariz v. Penman, 75 F.3d 1311, 1318-19 (9th

12  Cir. 1996).  Substantive due process primarily protects those liberties "deeply rooted in this

13  Nation's history and tradition," Moore v. East Cleveland, 431 U.S. 494, 503 (1905), such as

14  marriage, procreation, contraception, family relationships, child rearing, education, and an

15  individual's bodily integrity.  See Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992);

16  Armendariz, 75 F.3d at 1319.

17         In Graham v. Connor, the United States Supreme Court found that substantive due

18  process cannot supply the basis for a civil rights claim if the challenged governmental conduct is

19  prohibited by another, more specific, constitutional right. Graham, 490 U.S. 386, 394-95 (1989);

20  Buckles v. King County, 191 F.3d 1127, 1137 (9th Cir. 1999); Macri v. King County, 126 F.3d

21  1125, 1128 (9th Cir.1997); Armendariz, 75 F.3d at 1319.   Here, the conduct Plaintiff challenges

22  is covered by procedural due process and equal protection.    Thus, Defendants are entitled to

23  summary adjudication on Plaintiff's substantive due process claim.

24  **C.  Equal Protection**

25         The third claim alleges Defendants' violated Plaintiff's equal protection rights.

26  Defendants request summary adjudication on Plaintiff's third claim.  The Supreme Court has

27

28                                           30

1   held that the equal protection clause means "that no State shall deny to any person within its

2   jurisdiction the equal protection of the laws, which is essentially a direction that all persons

3   similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center,

4   473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th

5   Cir. 1997).  The Equal Protection Clause is intended to protect every person within a state's

6   jurisdiction "against intentional and arbitrary discrimination, whether occasioned by express

7   terms of a statute or by its improper execution through duly constituted agents." Village of

8   Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted). The Clause

9   protects a "class of one" when a plaintiff can show that he or she has been intentionally treated

10  differently than others similarly situated and there is no rational basis for the different treatment.

11  SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).  The number of

12  individuals in a class is of no consequence for the equal protection analysis, although

13  "[c]lassifications should be scrutinized more carefully the smaller and more vulnerable the class

14  is [and a] class of one is likely to be the most vulnerable of all."  Esmail v. Macrane, 53 F.3d

15  176, 180 (7th Cir.1995).  Thus to prevail, "the plaintiff must demonstrate that the government is

16  treating unequally those individuals who are prima facie identical in all relevant respects, and

17  that the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by

18  the defendant." Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001) (citation omitted).

19      Taking the evidence in the light most favorable to Plaintiff, there are facts showing that

20  the City intentionally enforced its requirement that massage therapists have 300 hours of training

21  by March 1, 2003 against Plaintiff but not against others similarly situated.   There is evidence

22  that after Ms. Valentine made a complaint against Plaintiff in April 2005, Rodriguez wrote the

23  word "void" across the copy of Plaintiff's license in the City's files because she did not believe

24  Plaintiff had proof of 300 hours of education on file with the City as of May 1, 2003.   In

25  addition, Defendant Wasden, Defendant Steele and Rodriguez discussed the voiding of

26  Plaintiff's licenses due to alleged non-compliance with the educational requirements of the

27

28                                          31

MMC.   On or about September 9, 2003, Plaintiff was sent a letter from the CITY reminding him that his massage practitioner license had lapsed during the suspension period.  From this evidence, a jury could find that Defendants specifically voided Plaintiff's license as of May 1, 2003 because he did not have sufficient proof of 300 hours of education in the City's file.

Plaintiff has submitted disputed evidence that nothing happened to other individuals who had licenses as of May 1, 2003 but did not have proof of 300 hours of education in the City's file. Rodriguez did not go through files and determine who needed to submit additional proof of education and who was in compliance with the new hour requirements.  There is evidence that other individuals also had documentation of less than 300 hours of education on file with the City as of May 1, 2003.  Both Andrya Lopez and Ann Tipon-Morg had licenses on May 1, 2005, and both had less than 300 hours of recorded education.   While Ms. Lopez's and Ms. Tipon-Morg's licenses have now expired, there is no indication or evidence that these licenses were ever voided, revoked, or even reviewed to see if they were in compliance.    In addition, as cited above, the court's own review of Exhibit A reveals several other individuals who appear to have had valid licenses as of May 1, 2003, but did not have 300 hours.   Plaintiff has met his burden of showing that an issue of material fact exists regarding whether Defendants took the same actions to revoke or void other massage therapists' licenses who, from Defendants' records, did not appear to have the required 300 hours as they took to revoke and void Plaintiff's license.

There is a disputed issue of fact on whether Defendants' actions towards Plaintiff were rationally related to a legitimate government interest.    The evidence that Defendants did not void other licenses with the same problem that Plaintiff had implies that Defendants did not consider the lack of hours to be a legitimate government interest.   In addition, Defendants did not review Plaintiff's license for the required hours until after Plaintiff's licenses had been summarily suspended.  Defendants did inform Plaintiff that they considered Plaintiff's licenses void after Plaintiff appealed the suspension.  However, taking all inferences in Plaintiff's favor, a jury could find that Defendant's actions to void Plaintiff's license were related to a "back up"

1   reason to terminate Plaintiff rather than a legitimate interest in having all therapists have

2   adequate training.   Thus, Defendants are not entitled to summary adjudication.

3   **D.  Qualified Immunity**

4        Defendants contend that Defendant Steele and Defendant Wasden are entitled to qualified

5   immunity.   A public official is entitled to qualified immunity if the law governing the official's

6   conduct was not clearly established, or if under clearly established law he could have reasonably

7   believed that his conduct was lawful. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.2001).   The

8   defendant bears the burden of establishing qualified immunity. Crawford-El v. Britton, 523 U.S.

9   574, 586- 87 (1998).

10       A court required to rule upon the qualified immunity issue must address two steps.   In

11  the first step, the court must answer the following question:   "Taken in the light most favorable

12  to the party asserting the injury, do the facts alleged show the officer's conduct violated a

13  constitutional right?"   Saucier v. Katz, 533 U.S. 194, 201 (2001); Johnson v. County of Los

14  Angeles, 340 F.3d 787, 792 (9th Cir. 2003).   If the answer is affirmative in that "a violation could

15  be made out on a favorable view of the parties' submissions, the next, sequential step is to ask

16  whether the right was clearly established."   Saucier, 533 U.S. at 201; Johnson, 340 F.3d at 792.

17  The Supreme Court emphasized that the "relevant, dispositive inquiry in determining whether a

18  right is clearly established is whether it would be clear to a reasonable [official] that his conduct

19  was unlawful in the situation he confronted."   Saucier, 533 U.S. at 201.   If the answer is

20  negative, the official is entitled to qualified immunity.

21       For the reasons discussed above, viewing the submitted evidence in the light most

22  favorable to Plaintiff, Defendant Steele's and Defendant Wasden's conduct violated (1)

23  Plaintiff's due process rights by failing to have a pre-deprivation hearing before suspending

24  Plaintiff's massage establishment license; (2) Plaintiff's due process rights by failing to hold a

25  timely post-deprivation hearing and failing to give adequate notice of this hearing; and (3)

26

27

28                                              33

Plaintiff's equal protection rights.[15]   Thus, the court must determine if a reasonable official

would have known that his conduct was unlawful in the situation confronted.

### *1.   Pre-Deprivation Hearing on Establishment License*

Several cases are instructive on qualified immunity in procedural due process cases.  In

Brewster v. Board of Education of the Lynwood Unified School District, 149 F.3d 971 (9th Cir.

1998), the plaintiff sued the school board for violating his procedural due process rights by

reducing his salary.  Id. at 974-76.  Before the school board reduced the plaintiff's salary, they

sent him two letters notifying him that unless they received additional information, verifying

prior employment, his salary would be reduced.  Id. at 974.   The school board voted to reduce

the plaintiff's salary, and after one meeting between an official and the plaintiff where the

plaintiff still did not provide the information, the official reduced the plaintiff's salary.  See id.

The plaintiff contended that the school board violated his procedural due process rights when

they unilaterally reduced his salary and retroactively withheld money to recoup the prior

overpayments without a hearing.  Id. at 982.

The Ninth Circuit affirmed the District Court's dismissal on qualified immunity grounds.

The Ninth Circuit stated that "'what process is due' is more easily asked than answered" and

"due process has never been, and perhaps never can be, precisely defined."  Id. at 983.  The Ninth

Circuit determined that what procedures are required differs depending on the context and the

application of the Mathews factors.  Id.  "While the right to due process is 'clearly established'

by the Due Process Clause, this level of generality was not intended to satisfy the qualified

immunity standard."  Id.  The Ninth Circuit acknowledged that the exact timing of an opportunity

to be heard at a meaningful time and in a meaningful manner -- whether it must be before or after

an alleged property deprivation -- is a function of the nebulous Mathews balancing test.  Id. at

984.  The Ninth Circuit recognized that while normally notice and an opportunity to be heard

---

[15]   The court only finds a constitutional violation by viewing the evidence in the light
most favorable to Plaintiff.   This finding is only for the purposes of deciding qualified immunity
on this motion for summary judgment.

should occur before an alleged deprivation, this rule is assuredly not hard and fast. Id. The Ninth Circuit concluded that even if the plaintiff was entitled to a pre-deprivation hearing, the school officials would be entitled to qualified immunity because it was not clear under Mathews that the process the plaintiff received fell below the constitutional minimum. Id. at 985. The Ninth Circuit found important that before the final deprivation occurred, the plaintiff was provided some opportunity to provide more information. Id.

In Chalkboard, Inc. v. Brandt, 902 F.2d 1375 (9th Cir. 1990), state officials summarily suspended the plaintiffs' license to operate a day care center without any notice or hearing because of abuse allegations.  The Ninth Circuit reviewed the District Court's denial of qualified immunity.  See id. at 1380.  Applying the Mathews factors, the court found no reasonable official could have believed  their actions met the constitutional requirements. Id. at 1380-82.  First, the Ninth Circuit found that taking away a license to operate an entire business greatly affected the plaintiffs' property interests. Id. at 1381.  Second, the Ninth Circuit found the risk of erroneous deprivation was high. Id.  Taking away a license for alleged child abuse without allowing an opportunity to be heard is not the type of decision that can easily be made by precise measurement of objective, external standards. See id.  Finally, in light of specific government regulations that provided a procedure if conditions present the possibility of serious harm to children, which were not followed, the Ninth Circuit found the burden of allowing additional procedural requirements balanced in favor of pre-deprivation notice. Id. at 1381-82.  Thus, the Ninth Circuit found the defendants were not entitled to qualified immunity.

In this case, the court must ascertain whether, under the three-part balancing test of Mathews, Plaintiff had a clearly established right to not have his massage establishment license summarily suspended and it would have been clear to a reasonable official that his conduct was unlawful in the situation he confronted.  Under Mathews, the first step is to consider the private interest affected by the official's actions.  Here, Plaintiff was deprived of his entire business for two months without any pre-deprivation hearing.  The interest in a livelihood was sufficiently

established that a reasonable official would have known that strong private interest was affected by summarily suspending Plaintiff's establishment license.   Second, a reasonable official should have known that there was a risk of an erroneous deprivation through the procedures they used. The undisputed evidence reveals that there was no reason to suspend the establishment license. A pre-deprivation hearing would have shown that suspending the establishment license would have prohibited other therapists from working in Plaintiff's business.   Finally, a reasonable official should have known that in weighing the government's interest against the burdens of additional procedural requirements, the government's interests were weak.   Unlike Plaintiff's therapist license, Defendants have not shown that a reasonable officer would believe allowing Plaintiff to maintain his establishment license would put additional clients in danger.   A reasonable official should have known that the government had no legitimate interest in summarily suspending the establishment license.   Thus, Defendants are not entitled to qualified immunity on their failure to give Plaintiff a pre-deprivation hearing before suspending Plaintiff's establishment license.

### *2.  Post-Deprivation Hearing*

Citing to case authority that has found no constitutional violation where an individual was summarily suspended from their job for 60 days before a post-deprivation hearing was held, Defendants contend that they are entitled to qualified immunity on Plaintiff's post-deprivation haring claim.   In FDIC v. Mallen, 486 U.S. 230 (1988), a Government agency suspended a bank employee from his job.   The relevant statue required the agency to provide a post-deprivation hearing within 30 days, but gave additional time within which to issue a decision.   The bank employee claimed that the 30 to 90 day delay between the suspension and the post-deprivation hearing and decision violated the Due Process Clause.   The Supreme Court recognized that there "is a point at which an unjustified delay in completing a post-deprivation proceeding 'would become a constitutional violation.'" Id. at 242.   The Supreme Court applied the Matthew v. Eldridge factors, including the importance of and harm to the private interest, the likelihood of

1   interim error, and the governmental interest in a delay, and the Supreme Court concluded that a

2   30 day delay of the hearing and a potential 90 day delay in the decision did not violate the

3   Constitution. Id. at 242-43.

4        Here, Plaintiff's right to a timely post-deprivation hearing was clearly established.   The

5   issue is whether a reasonable official would have known that the approximate 60 day delay in

6   this case violated the Constitution.   The Ninth Circuit has recognized that while the right to

7   procedural due process is clearly established, the level of generality provided by the Due Process

8   Clause often cannot satisfy the qualified immunity standard.   Brewster, 149 F.3d at 983.

9        At first glance, Mallen appears to support Defendants' position that a reasonable official

10   would not know a 60 day delay violated the Due Process Clause because the Supreme Court

11   upheld a 30 to 90 day delay.   However, the Supreme Court's decision in Mallen cannot be

12   viewed without considering its rational.   The Supreme Court in Mallen weighed the Matthew v.

13   Eldridge factors and concluded that the harm to the private interests and the likelihood of interim

14   error were outweighed by the governmental interest in a 30 to 90 day delay.   Here, there is no

15   evidence that Defendants had any governmental interest which necessitated the delay.   A

16   reasonable official would have known that a 60 day delay is not justified without a governmental

17   interest supporting that delay.    Thus, Defendants are not entitled to qualified immunity.

18   ***3.  Equal Protection***

19        Defendants contend that they are entitled to qualified immunity on the equal protection

20   claim.   In resolving qualified immunity, the court must make all inferences in Plaintiff's favor.

21   Saucier, 533 U.S. at 201.   Viewing the evidence in the light most favorable to Plaintiff, there is

22   evidence that Defendants' records showed that other therapists were also lacking 300 hours as of

23   May 1, 2003.   Plaintiff's evidence indicates that other than one letter sent to all massage

24   therapists, Defendants took no actions to void, revoke, or suspend anyone else's license.   Except

25   for Plaintiff, Defendants relied on the other massage therapists to supply them with proof of

26   additional hours or notify Defendants they were no longer practicing massage therapy.   There is

27

28                         37

no evidence Defendants checked with the potentially violating massage therapists and informed them their licenses were voided or revoked.  There is evidence that Defendants first specifically informed Plaintiff that his license was void after Plaintiff requested a hearing, marked his license void, and ensured that Plaintiff would not practice massage until he filed a new application, along with proof of the required hours.   There is evidence that Plaintiff was treated differently than other massage therapists whose records also indicated they did not have the required hours.  Because Defendants argue in their motion that no one was treated differently than Plaintiff, Defendants provide no evidence that there was a rational reason to treat Plaintiff differently.  Taking the evidence in the light most favorable to Plaintiff, a reasonable official should have known he was treating Plaintiff differently than others similarly situated and there was no rational basis for the different treatment.  See SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002).   Thus, Defendants are not entitled to qualified immunity.

**E.  Punitive Damages**

Defendants contend that they are entitled to summary judgment on Plaintiff's request for punitive damages against Defendant Steele and Defendant Wasden.   Punitive damages are appropriate in a 42 U.S.C. § 1983 action when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Smith v. Wade, 461 U.S. 30, 56 (1971); Dubner v. City and County of San Francisco, 266 F.3d 959 (9th Cir.2001); Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 707 (9th Cir.1989).   While compensatory damages are mandatory once liability is found, punitive damages are never awarded as of right.  Smith, 461 U.S. at 52.   Once the jury has determined that the defendant is factually liable, its decision to award punitive damages properly depends on its discretionary moral judgment that the defendant's culpable conduct merits the particular punitive award imposed.  See Larez, 956 F.2d at 648 (discussing the standard set forth in Smith, 461 U.S. at 52). The decision to make this judgment and impose punitive sanctions is "within the exclusive province of the jury." Kennedy, 901 F.2d at 707.

1    Plaintiff contends that he is entitled to punitive damages because Defendants ignored

2  clearly established constitutional requirements by not offering Plaintiff a pre-deprivation hearing

3  and not offering a post-deprivation hearing until Plaintiff lost his business.   Plaintiff argues that

4  Defendants were careless by failing to learn all facts before suspending both licenses.   Plaintiff

5  points out that Defendants recognized the stigma associated with allegations of sexual battery,

6  yet issued press releases before a hearing and based on one-side of the story.   Plaintiff argues

7  that Defendants attempted to make up an after-the-fact rational to excuse their constitutional

8  violations.

9  *1.  Due Process Claim*

10    Malicious, wanton, or oppressive acts or omissions are all proper predicates for punitive

11  damages under Section 1983 and foster deterrence and punishment over and above that provided

12  by compensatory awards.  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005).   Here, Plaintiff's

13  evidence supporting punitive damages on the due process claims is the same as the evidence

14  supporting compensatory damages – Defendants' violated Plaintiff's due process rights.

15  Arguments and evidence that Defendants acted carelessly in violating Plaintiff's due process

16  rights is insufficient for punitive damages.   The court recognizes that the standard for Section

17  1983 liability can overlap the standard for punitive damages if both look at the defendant's

18  reckless or callous disregard or indifference to the plaintiff's constitutional rights.  Larez v. City

19  of Los Angeles, 946 F.2d 630, 649 (9th Cir.1991).   However, a due process claim does not

20  consider the Defendant's motive.   Thus, for a due process claim, something more than the

21  constitutional violation is necessary to prove punitive damages.   Here, Plaintiff has provided no

22  evidence indicating Defendants' due process violations were motivated by evil intent or reckless

23  or callous indifference to Plaintiff's rights.   Plaintiff has only alleged Defendants were careless

24  and nnegligent.   Accordingly, Defendants' motion for summary adjudication on the request for

25  punitive damages for the procedural due process claim is granted.

26

27

28                                                39

1    ***2. Equal Protection Claim***

2            Unlike Plaintiff's due process claim, Plaintiff's equal protection claim alleges conduct

3    and motives beyond those alleged for the constitutional violation.    In addition, an equal

4    protection claim considers the defendants' motives.    Plaintiff provides evidence that the issue of

5    Plaintiff's lack of hours was raised by Defendants near the time of the post-deprivation hearing.

6    In preparation for the post-deprivation hearing, Plaintiff's license was specifically pulled and

7    Plaintiff's possible lack of hours noted.    Based on this evidence, a reasonable jury could find a

8    circumstantial inference that Defendants only brought up Plaintiff's lack of hours when they

9    realized Defendants' actions would not be sustained at the administrative hearing.    A reasonable

10    jury could find that Defendants' actions regarding Plaintiff's lack of hours were simply an

11    attempt to cover up Defendants' actions regarding suspending Plaintiff's licenses.    Thus, there is

12    a disputed issue of fact on whether Defendants' actions were motivated by a discriminatory intent

13    and a malicious motive.    Accordingly, Defendants are not entitled to summary adjudication on

14    Plaintiff's request for punitive damages on Plaintiff's equal protection claim.

15    **F. Negligence**

16            The fourth claim for relief alleges that Defendants were negligent.    Defendants request

17    summary adjudication of this claim.    Plaintiff has not opposed Defendants' motion on this claim.

18    Where a plaintiff fails to oppose a motion for summary judgment, the court may grant summary

19    judgment if the defendant has supported the motion with sufficient papers that on their face do

20    not reveal a genuine issue of material fact.    Henry, 983 F.2d at 950.

21            Defendants contend that they have immunity for their acts in suspending Plaintiff's

22    licenses.    California Government Code § 821.2 states that: "A public employee is not liable for

23    an injury caused by his issuance, denial, suspension or revocation of . . . . any permit, license . . .

24    or similar authorization where he is authorized by enactment to determine whether or not such

25    authorization should be issued, denied, suspended or revoked."    California Government Code §

26    818.4 states that: "A public entity is not liable for an injury caused by the issuance, denial,

27

28                                                    40

suspension or revocation of . . . any permit, license . . . or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."   Unlike the MMC sections concerning issuing, denying, and renewing massage therapy licenses, the MMC sections pertaining to suspending licenses states the Police Chief "may" suspend licenses.   See MMC 5-2.1108 & 5-2.1001(a)(c).   Because the Police Chief's duties concerning the suspension of licenses is not mandatory, Defendants have immunity pursuant to California law.   Thus, Defendants are entitled to summary adjudication on Plaintiff's negligence claim.

## ORDER

Accordingly, based on the above memorandum opinion, the court ORDERS that:

1.   Defendants' motion for summary judgment and/or adjudication is GRANTED in part and DENIED in part;

2.   Defendants' motion for summary adjudication is GRANTED on Plaintiff's:

    a.   Procedural due process claim to the extent Plaintiff contends Defendants took a liberty interest;

    b.   Procedural due process claim to the extent it is based on the failure to give Plaintiff a pre-deprivation hearing before suspending Plaintiff's massage therapist license;

    c.   Substantive due process claim;

    d.   Takings claim;

    e.   Negligence claim; and

    f.   Request for punitive damages on the procedural due process claim.

3.   Defendants' motion is DENIED in all other respects;

4.   This action will proceed on Plaintiff's

    a.   Procedural due process claim to the extent it is based on a denial of Plaintiff's property interest;

b.   Procedural due process claim to the extent it is based on the failure to give Plaintiff a pre-deprivation hearing before suspending Plaintiff's massage establishment license;

c.   Procedural due process claim to the extent it is based on the failure to give Plaintiff a timely post-deprivation hearing and give Plaintiff adequate notice of that post-deprivation hearing;

d.   Equal protection claim based on Defendants' alleged treatment of Plaintiff's lack of documentation regarding his education hours differently than other massage therapists without a rational basis; and

e.   Request for punitive damages on Plaintiff's equal protection claim.

IT IS SO ORDERED.

**Dated:    December 16, 2005**          _____/s/ Anthony W. Ishii_____
0m8i78                                         UNITED STATES DISTRICT JUDGE

42